**The below described is SIGNED.**

**Dated: May 25, 2012**



**WILLIAM T. THURMAN**
**U.S. Bankruptcy Chief Judge**



___

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| **In re:** | |
| **NELDON P. JOHNSON,** | Bankruptcy No. 11-20679 |
| Debtor. | Chapter 7 |
| **INA MARIE NEWMAN f/k/a INA MARIE JOHNSON,** | |
| | Adversary Proceeding 11-02393 |
| Plaintiff, | |
| v. | |
| **NELDON P. JOHNSON,** | |
| Defendant. | |

**MEMORANDUM DECISION REGARDING MOTIONS FOR SUMMARY JUDGMENT**

This matter came before the Court on cross motions for summary judgment to determine the dischargeability of a debt pursuant to §§ 523(a)(5) and 523(a)(15) of the Bankruptcy Code.[1] The Court conducted a hearing on this matter on April 9, 2012, in which Shane Keppner appeared on behalf of plaintiff Ina Marie Newman ("Newman") and David Leta appeared on behalf of the

___

[1] Unless otherwise stated, the reference to Sections shall apply to Title 11 of the United States Code.

debtor/defendant Neldon P. Johnson ("Johnson" or the "Debtor"). At the conclusion of the hearing, the Court took this matter under advisement to determine whether either party should prevail as a matter of law in this dischargeability proceeding.

After careful review of the statutory authority, the case law, and the parties' briefs and arguments, the Court issues the following Memorandum Decision.[2]

## I. JURISDICTION AND VENUE

This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is appropriate under 28 U.S.C. § 1408. Notice of the hearing on these cross motions is found to be appropriate and adequate.

## II. PROCEDURAL BACKGROUND AND FINDINGS OF FACT

Johnson filed for chapter 7 bankruptcy relief on January 20, 2011. On April 25, 2011, the Debtor initiated an adversary proceeding, 11-02395, and sought declaratory relief requesting the Court find any debt owed to Newman to be dischargeable. Also on April 25, 2011, Newman initiated this adversary proceeding, 11-02393. Newman's complaint alleged nondischargeability under §§ 523(a)(5) and (15) and denial of discharge under §§ 727(a)(2) and (5). On June 2, 2011, Newman filed a motion to consolidate the adversary proceedings. After a hearing, the Court granted that motion, and entered a consolidation order on September 8, 2011. On May 25, 2011, Johnson filed a motion to dismiss Newman's complaint. On July 28, 2011, the Court entered an order: (i) denying Johnson's motion to dismiss as to the §§ 523(a)(5) and (15) causes of action; (ii) granting the motion

---

[2]The Memorandum Decision shall constitute the Court's findings and conclusions as allowed by Fed. R. Civ. P. 52, incorporated into this proceeding by Fed. R. Bankr. P. 7052.

to dismiss as to the § 727(a)(2) cause of action; and (iii) finding that the complaint failed to adequately plead a cause of action under § 727(a)(5) but granting Newman leave to file an amended complaint on the § 727(a)(5) claim. On August 8, 2011, as allowed by the Court's order of July 28, 2011, Newman filed an amended complaint, alleging three causes of action, including: (i) nondischargeability under § 523(a)(5); (ii) nondischargeability under § 523(a)(15); and (iii) denial of discharge under § 727(a)(5)(the "Amended Complaint"). On January 31, 2012, Newman filed her motion for summary judgment to determine the debt nondischargeable pursuant to § 523(a)(15). On February 24, 2012, Johnson filed his motion for summary judgment on the first two causes of action alleged in Newman's Amended Complaint, the dischargeability of the debt under §§ 523(a)(5) and 523(a)(15). Neither party requested summary judgment on the § 727(a)(5) claim, and that claim remains to be tried.

The Court finds there is no genuine issue as to the following material facts. Newman and Johnson took a trip together on May 3, 1964, in which it appears their intentions were to get married. However, car troubles prevented them from making it to their destination, and the parties returned home. In 1965, the parties participated in a religious wedding ceremony. However, at no time did the parties obtain a marriage license. On July 20, 2000, Newman filed a divorce action in the Utah Fourth District Court (the "State Court") against Johnson. Newman's complaint alleged that "[t]he parties are wife and husband, having been married on May 3, 1964 in Arizona." Johnson's answer to the divorce complaint admitted this fact. The parties entered into a stipulation regarding the division of marital property. On June 6, 2001, the State Court entered Findings of Fact and Conclusions of Law granting the parties a divorce, stating that "[t]he petitioner and respondent were married on May 3, 1964."

3

The State Court also entered an Amended Decree of Divorce (the "Divorce Decree"), memorializing the parties' stipulation on June 27, 2001. The stipulation and subsequent Divorce Decree granted to Newman two pieces of real property, a Smith Barney account, and an obligation to pay from Johnson $2,800,000 as a property settlement. The property settlement required Johnson to pay Newman $8,333.33 per month, commencing July 1, 2001, with a balloon payment for the balance due on July 1, 2006, secured by a note and trust deed on the real and personal property and inventory of the U-Check Company, which had previously been owned by both parties. The Divorce Decree also granted to Johnson an interest in the U-Check Company, stock in International Automated Systems (IAS), and all patents, patents pending, and ideas that he had created. The parties dispute the exact amount paid by Johnson to Newman following the divorce decree, but it was no more than $100,000.

Approximately six years later, in October of 2007, Johnson filed a Motion to Vacate the Divorce Decree alleging a lack of subject matter jurisdiction of the State Court due to the fact that the parties were never legally married (the "Motion to Vacate"). The State Court found that while the parties "had never actually been married" in the thirty-seven years prior to the divorce, Johnson had taken the position that they were married in the divorce proceedings, and thus the Utah Supreme Court case *Caffall v. Caffall*, 303 P.2d 286 (Utah 1956)[3] was controlling. The State Court found that Johnson's Motion to Vacate was an attempt to avoid his obligations to Newman, that Johnson's actions when taken altogether constituted bad faith, and that Johnson was "estopped from attacking

---

[3] In *Caffall*, the Utah Supreme Court found that even though two parties were never legally married, where Mr. Caffall participated in a divorce action brought by Ms. Caffall and did not resist Ms. Caffall's application for divorce, Mr. Caffall was estopped from attacking the validity of the divorce decree in order to avoid his responsibility to support the couple's children.

the Amended Decree, despite any lack of subject matter jurisdiction." Johnson appealed the decision to the Utah Supreme Court. The Utah Supreme Court issued a decision on May 7, 2010, stating that while the parties "never took steps to have their marriage legally recognized" before the divorce proceedings, the State Court had subject matter jurisdiction to issue the divorce decree. *Johnson v. Johnson*, 234 P.3d 1100, 1101 (Utah 2010). In doing so, the Utah Supreme Court also stated, "[w]e therefore overrule our holding in *Caffall* and hold that because courts of general jurisdiction have the authority to adjudicate divorces, we will not invalidate a divorce decree on the grounds that the right involved in the suit did not embrace the relief granted." *Id*. at 1103-04 (quotations omitted). The Court found that because the State Court had subject matter jurisdiction to enter the divorce decree, Johnson "cannot collaterally attack it." *Id*. at 1104.

## III. DISCUSSION

### A. Summary Judgment Standard

A motion for summary judgment will be granted if the pleadings, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Pleadings must be liberally construed in favor of the party opposing summary judgment. *Harman v. Diversified Med. Invs. Corp.*, 488 F.2d 111, 113 (10th Cir. 1973). When a moving party's motion for summary judgment is made and supported as provided in this rule, the nonmoving party's response must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). A fact is material if it may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes as to non-material facts are not important and do not bar the entry of summary judgment. *Kaiser-Francis Oil Co. v. Producer's Gas*

*Co.*, 870 F.2d 563 (10th Cir. 1989). If the nonmoving party's evidence is "merely colorable, or is not significantly probative, there is insufficient evidence and summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. On a motion for summary judgment the court cannot evaluate credibility nor can it weigh evidence. *National American Ins. Co. v. American Re-Insurance Co.*, 358 F.3d 736, 742-43 (10th Cir. 2004).

It is under this standard that the Court considers the cross motions for summary judgment in this case. The one modification to the foregoing is that because these are cross motions for summary judgment, the principle of some deference to the "opposing party" is somewhat diluted as both parties are the "opposing party." As noted above, the Court's ruling is limited to whether summary judgment is appropriate in favor of Newman on the second cause of action in her Amended Complaint, nondischargeability under § 523(a)(15), and whether summary judgment is appropriate in favor of Johnson on the first and second causes of action in Newman's Amended Complaint, nondischargeability under §§ 523(a)(5) and (15).

**B.     Positions of the Parties**

Newman argues that summary judgment should be granted in her favor under § 523(a)(15) for a number of reasons. She argues that the *Rooker-Feldman* doctrine and the doctrine of collateral estoppel prevent this Court from retrying the issue of whether the parties were legally married because Johnson admitted in his State Court answer that the parties were married on May 3, 1964, and because the Divorce Decree under which the debt is owed from Johnson contained a finding of fact that the parties were married on May 3, 1964. Newman further argues that even if these doctrines do not apply, under Utah state law, the parties are married. She argues that the parties have

a "marriage by estoppel" under the *Caffall* decision. She also argues that marriage without a license is voidable, not void, under Utah law and is therefore valid.

Johnson argues that summary judgment should be granted in his favor because the parties were never legally married. His argument is premised upon a fairly strict reading of the code sections in question. He argues that §§ 523(a)(5) and (15) only apply to the specific parties named therein, that Newman is not his "former spouse," and that because neither party was the legal spouse of the other, Newman does not qualify for the exceptions in § 523. He denies that the *Rooker-Feldman* doctrine is applicable because the Bankruptcy Court has jurisdiction to determine dischargeability, and the State Court determined the validity of the Divorce Decree, not whether the debt was dischargeable. He argues that collateral estoppel applies in his favor because the State Court and Utah Supreme Court stated explicitly in their decisions that the parties were never legally married. He also argues that under the Defense of Marriage Act ("DOMA"), 1 U.S.C. § 7 and 28 U.S.C. § 1738C, the parties do not fall under the definition of "spouse" applicable to federal statutes, and therefore, the debt owed to Newman does not fall under the exceptions to discharge.

**C.  Dischargeability Standard**

Section 523(a)(15) makes nondischargeable any debt owed "to a spouse, former spouse, or child of the debtor and not of the kind described in [§ 523(a)(5)] that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit." Section 523(a)(15) "refer[s] to non-support debts that the debtor incurred in connection with a separation agreement." *In re Wodark*, 425 B.R. 834, 838 (B.A.P. 10th Cir. 2010). Section 523(a)(5) makes nondischargeable any debt owed for a "domestic support

obligation." Section 101(14A) defines a "domestic support obligation" as one that is "owed to or recoverable by (i) a spouse, former spouse or child of the debtor or such child's parent, legal guardian, or responsible relative; or (ii) a governmental unit" that is "in the nature of alimony, maintenance, or support," that is established by "a separation agreement, divorce decree, or property settlement agreement . . . [or] an order of a court of record" and that is "not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily."

A number of decisions from the United State Supreme Court (the "U.S. Supreme Court"), the Tenth Circuit Court of Appeals (the "Tenth Circuit"), and the Bankruptcy Appellate Panel for the Tenth Circuit are helpful in this analysis. The Tenth Circuit has held that "exceptions to discharge are to be narrowly construed, and because of the fresh start objectives of bankruptcy, doubt is to be resolved in the debtor's favor." *In re Sandoval*, 541 F.3d 997, 1001 (10th Cir. 2008) (quoting *In re Kaspar*, 125 F.3d 1358, 1361 (10th Cir.1997)). The burden of proving that a debt falls within a statutory exception is on the party opposing discharge. *In re Black*, 787 F.2d 503, 505 (10th Cir. 1986). Because the purpose of bankruptcy is to provide the debtor a "fresh start," statutory exceptions to discharge have been "narrowly limited to those areas in which 'Congress evidently concluded that the creditors' interest in recovering full payment of debts . . . outweighed the debtors' interest in a complete fresh start.'" *In re Jones*, 9 F.3d 878, 880 (10th Cir. 1993) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). However, "certain competing public policy interests, such as familial obligations, will trump the 'fresh start policy.'" *In re Merrill*, 252 B.R. 497, 503 (B.A.P. 10th Cir. 2000); *see also Matter of Crosswhite*, 148 F.3d 879, 881 (7th Cir. 1998) ("That policy of protecting and favoring the debtor is tempered . . . when the debt arises from a divorce or separation agreement.").

**D.    The *Rooker-Feldman* Doctrine**

Newman argues that the *Rooker-Feldman* doctrine bars this Court from determining that she is not Johnson's "former spouse" for the purposes of deciding whether her debt is nondischargeable under § 523(a)(15) and implicitly that the strict reading of the relevant Bankruptcy Code sections leads to an absurd result. The *Rooker-Feldman* doctrine holds that "'a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in [federal] court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Knox v. Bland*, 632 F.3d 1290, 1292 (10th Cir. 2011) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005–06 (1994)). The *Rooker-Feldman* doctrine arises from two cases where the U.S. Supreme Court found that lower federal courts were precluded from exercising appellate jurisdiction over final state court judgments because only the U.S. Supreme Court has the authority to review such judgments. In *Rooker*, the U.S. Supreme Court reasoned:

> If the [state court] decision was wrong, that did not make the judgment void, but merely left it open to reversal or modification in an appropriate and timely appellate proceeding. Unless and until so reversed or modified, it would be an effective and conclusive adjudication. Under the legislation of Congress, no court of the United States other than this court could entertain a proceeding to reverse or modify the judgment for errors of that character. To do so would be an exercise of appellate jurisdiction.

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923) (citations omitted). The Court went on to say that "an aggrieved litigant cannot be permitted to do indirectly what he no longer can do directly." *Id*. at 416. In *Feldman*, decided sixty years later, the U.S. Supreme Court found that if the claims brought before a lower federal court were "inextricably intertwined with the state court's denial in a judicial proceeding," the federal court was precluded from hearing those claims. *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 483 (1983). The *Rooker-Feldman* doctrine

is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indust. Corp.*, 544 U.S. 280, 284 (2005). It does not supplant alternative preclusion doctrines available to the federal courts in reviewing state court judgments. *Id*.

The Court determines that it is barred from determining that Newman is not Johnson's "former spouse" under the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine is applicable in this proceeding as Johnson is effectively asking the Court for an appeal of the Divorce Decree. In Utah, it is impossible to obtain a divorce decree without a finding that the parties were married. Thus, the issue of whether the parties were married was "inextricably intertwined" with the Divorce Decree judgment. For this Court to determine that Newman and Johnson are not former spouses would create an absurdity of Utah law where one could have a "divorce decree" without the parties being legal spouses.[4] The Utah courts have rejected that result twice now, both in the State Court's denial of Johnson's Motion to Vacate and the Utah Supreme Court's decision in *Johnson v. Johnson*. Johnson attempted to collaterally attack the determinations of the Divorce Decree in the State Court and was unsuccessful. Although the Utah Supreme Court stated it was overruling *Caffal*, it did not set aside the State Court's findings. That part of the Utah Supreme Court's holding was very narrow. Accordingly, Johnson cannot now collaterally attack the very same issues before this Court under

---

[4] "All statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose." *Haggar Co. v. Helvering*, 308 U.S. 389, 394 (1940).

*Rooker-Feldman*.

Further, to clarify, Johnson argues that because the State Court did not decide dischargeability, and only this Court may do so, the *Rooker-Feldman* doctrine does not apply. The distinction here is that the Court determines it is obligated to apply state law decisions on previously decided issues in the process of determining dischargeability. When the Court applies the rulings of the State Court, nondischargeability follows.

Because there is a final state court decision in which an essential element of the judgment was implicit that the parties were former spouses, this Court cannot now determine that the parties are not "former spouses." Therefore, this Court determines that it is barred by *Rooker-Feldman* from determining the parties are not "former spouses" for purposes of determining dischargeability, and as there is no dispute that a valid divorce decree exists, the debt falls within the exception to discharge under § 523(a)(15).

**E.     Collateral Estoppel**

The Court further determines that even if the *Rooker-Feldman* doctrine is not applicable, Johnson is collaterally estopped from arguing that Newman is not his "former spouse." Collateral estoppel precludes this Court from relitigating an issue in federal court has already been litigated in state court. *San Remo Hotel, L.P. v. City and County of San Francisco, Cal.*, 545 U.S. 323, 336 (2005). The Tenth Circuit has explained the purpose of collateral estoppel, stating, "[c]ollateral estoppel, or issue preclusion, is designed to prevent needless relitigation and bring about some finality to litigation. Collateral estoppel bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim." *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009) (citations

11

omitted). There are four elements to collateral estoppel under Utah law: "(1) The issue decided in the prior adjudication must be identical to the one presented in the action in question; (2) there must be a final judgment on the merits; (3) the party against whom the plea is asserted must be a party in privity with a party to the prior adjudication; and (4) the issue in the first action must be completely, fully, and fairly litigated." *Gomes v. Wood*, 451 F.3d 1122, 1132 (10th Cir. 2006) (citing *Career Serv. Review Bd. v. Utah Dep't of Corr.*, 942 P.2d 933, 938 (Utah 1997)).

All four elements of collateral estoppel are satisfied by the State Court Divorce Decree. First, the issue decided in the prior adjudication, namely whether the parties were married, is identical to the one presented in the action in question. As noted above, the State Court had to make a finding that the parties were married in order for the parties to obtain the Divorce Decree, so the issue of whether the parties were legal spouses was already adjudicated. Second, the State Court's Findings of Fact and Conclusions of Law and Divorce Decree are final and valid state court judgments that have never been overturned.[5] Third, the parties are identical to those in the divorce proceedings. Fourth, there is no dispute that the issue was fully and fairly litigated.

The Court finds that Johnson does not dispute that the Divorce Decree exists and remains valid. He argued at the hearing on these motions that the Divorce Decree may even be a basis upon which Newman may file a general unsecured claim in the main bankruptcy case. He does not dispute that the State Court found in its Findings of Fact and Conclusions of Law that the parties were

---

[5] The State Court findings may have been factually incorrect, but it is not for this Court to correct final determinations from the state courts. The state appellate courts are the proper forum to address those issues. *See Reed v. Allen*, 286 U.S. 191, 201 (1932) (stating there is a "general and well-settled rule that a judgment, not set aside on appeal or otherwise, is equally effective as an estoppel upon the points decided, whether the decision be right or wrong.").

12

married. He does not dispute that the time to appeal that judgment has run. Therefore, there is no dispute that a valid final state court judgment exists that contains as an essential implicit part of its ruling that the parties were "former spouses." Consequently, under collateral estoppel, this Court will not relitigate the issue of whether the parties were married. Because this Court finds that a valid Divorce Decree exists and that Johnson is estopped from arguing that Newman is his "former spouse," the debt clearly falls within the exception to nondischargeability found in § 523(a)(15).

Until 2006, Johnson took the position throughout the divorce proceedings that Newman was his legal spouse. To allow him to take a different position to avoid what were determined by the State Court to be marital obligations now, after the time period for Newman to file an application to obtain marital status under Utah Code § 30-1-4.5 has run, would violate equitable estoppel principles.[6] Additionally, it would run counter to the estoppel principles set forth in the Utah Supreme Court decisions of *Johnson v. Johnson*, 234 P.3d 1100, 1104 (Utah 2010) (finding that Johnson "cannot collaterally attack" the Divorce Decree) and, to the extent it is controlling, *Caffall v. Caffall*, 303 P.2d 286, 286 (Utah 1956) (finding that "[i]t would be a travesty on justice if the defendant could now say that because he was not legally married he cannot be held for [his support obligation]."). In the interest of comity, and in order to extend deference to the Utah courts' decisions, this Court determines that collateral estoppel is appropriate in this matter.

The concept and principle of judicial estoppel is also applicable here. This principle was adopted by the Tenth Circuit in the case of *Johnson v. Lindon City Corp.*, 405 F.3d 1065, 1069 (10th

---

[6] Under Utah law, one method for becoming a legal spouse in the state of Utah is to obtain a statutory marriage pursuant to § 30-1-4.5 of the Utah Code. Under that section, a marriage may be solemnized by "a court or administrative order" that determines the parties have fulfilled the requirements of the statute. Utah Code Ann. § 30-1-4.5. Such an order must be obtained within one year of the termination of the relationship. *Id*.

Cir. 2005) ("'[W]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him.'") (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).[7]  Where Johnson took the position of being legally married and thus created a "spouse" relationship in the divorce pleadings, he is judicially estopped from changing that position in the current subsequent legal proceeding before this Court.  This is especially true as Newman would be prejudiced by such a change in his position.

Johnson further argues that the definition of "spouse" under § 523(a)(15) and (5) is controlled by DOMA and that Newman is not his spouse under that federal statute.[8]  The Court recognizes that in the absence of a state court ruling that the parties were spouses, the definition of "spouse" in DOMA would be controlling.  However, because the State Court found, and the Utah Supreme Court impliedly affirmed in its choice not to invalidate the parties' Divorce Decree, that the parties were "spouses" under Utah law, principles of preclusion apply.  Consequently, it is unnecessary for this Court to determine whether the parties are spouses, and DOMA is inapplicable to this proceeding.

Finally, at oral argument, Johnson argued that should this Court find that Newman was Johnson's spouse under the facts of this case, the Court would be establishing an inappropriate

---

[7] The Tenth Circuit has also found that judicial estoppel principles are applicable in bankruptcy proceedings.  *See Eastman v. Union Pacific R. Co.*, 493 F.3d 1151 (10th Cir. 2007).

[8] DOMA states that "[i]n determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." 1 U.S.C. § 7.

14

precedent. Johnson argued that under equal protection principles, this Court would also have to find in other cases that same sex partners were "spouses" even though such partners have not obtained a marriage license or other legal approvals of their arrangement without the benefit Utah law granting them the ability to obtain a legal marriage. The factual scenario before the Court is distinguishable as in this case there is a State Court judgment clearly finding that the parties were married and implicitly spouses under Utah law. In the interest of comity, this Court is giving deference to that State Court decision. Johnson's scenario raises a plethora of issues, but none of them are present here. The Court is narrowly determining the issues in this case based on the facts of this case alone.

**F.     The Nature of the Debt Controls**

Another principle that guides this Court's decision is set forth in the Tenth Circuit decision, *In re Miller*, 55 F.3d 1487 (10th Cir. 1995). In *Miller*, the Tenth Circuit found that although a guardian ad litem for a child was not a "spouse, former spouse or child" of the debtor, guardian ad litem fees were nondischargeable under § 523(a)(5). *Id*. The Tenth Circuit reasoned that "form should not be placed over substance and that it is the nature of the debt that controls, not the identity of the payee." *Id*. at 1490. This logic was recently found applicable to § 523(a)(15) actions by the Bankruptcy Appellate Panel for the Tenth Circuit. *See In re Wodark*, 425 B.R. at 837-38 ("What matters in a § 523(a)(15) case is (1) the nature of the debt; and (2) whether the debt was incurred in the course of a divorce or separation."). This Court concludes that to find that Newman's debt is not within the purview of § 523(a)(15) would be to place form over substance in contravention of the guidance provided by the *Miller* decision. Therefore, the Court believes it is appropriate to find that the nature of Newman's debt is of the type that is covered by § 523(a)(15) and is nondischargeable.

15

## IV. CONCLUSION

Based on the foregoing, the Court determines that Newman has carried her burden on her motion, that she has prevailed in showing that the obligation in question falls within the narrow exceptions to discharge articulated by the Tenth Circuit in *Sandoval*, 541 F.3d at 1001, and that while her position may not be strictly that of a spouse or former spouse under DOMA, the State Court and the Utah Supreme Court's decisions have a preclusive effect on this Court. Accordingly, Newman's motion for summary judgment should be granted on the second cause of action in her Amended Complaint. Johnson's motion for summary judgment should be denied. The § 727(a)(5) claim will proceed in accordance with the Court's October 7, 2011 Order Governing Scheduling and Preliminary Matters. A separate order will accompany this Memorandum Decision.

_____END OF DOCUMENT_____



\_\_\_ooo0ooo\_\_\_
**SERVICE LIST**

Service of the foregoing **MEMORANDUM DECISION** will be effected through the Bankruptcy Noticing Center to each party listed below:

Shane L. Keppner
Jared L. Inouye
BENNETT TUELLER JOHNSON & DEERE
3165 East Millrock Drive, Suite 500
Salt Lake City, Utah 84121
    *Attorneys for Plaintiff*

David E. Leta
Engels Tejeda
SNELL & WILMER LLP
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101
    *Attorneys for Debtor/Defendant*

U.S. Trustee's Office
Ken Garff Bldg.
405 South Main Street
Suite 300
Salt Lake City, UT 84111

Philip G. Jones
853 West Center Street
Orem, UT 84057
    *Chapter 7 Trustee*